IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Number: 3:23CR150-REP |
| | ) |
| KUMKIO MARTIN, | ) |
| Defendant. | ) |
| | ) |
| | ) |

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE DERIVED FROM THE FLOCK CAMERA SYSTEM**

The Court should suppress evidence derived from the use of a new mass surveillance system, the Flock Camera system, under *Leaders of a Beautiful Struggle v. Baltimore Police Dept.*, 2 F.4th 330 (4th Cir. 2021) (en banc).

**I.      Background**

Flock Safety is a private company that markets surveillance equipment and systems to law enforcement, homeowners associations, and others.[1] In brief, it installs, along streets, cameras that operate 24/7, and log high resolution photos of every vehicle that pass them. These photographs are uploaded and analyzed using machine learning to identify, without any work by individuals, characteristics of each vehicle – not just license plates, but an entire "vehicle fingerprint." The resulting database of vehicles and camera locations can be searched instantaneously by law

---

[1] See generally Exhibit 1, Affidavit of Lars Daniels regarding Flock Safety

1

enforcement officers to track the movement of vehicles across jurisdictions for as long as the data is stored, or find every vehicle to pass a location at a certain date or time.

The result of this combination of high resolution constant 24/7 surveillance, networking between and across any camera owned by Flock, and the use of machine learning to organize and make available data at the click of a button violates the Fourth Amendment.  It places in the hands of law enforcement unprecedented, access to private details of citizens' lives through indiscriminate, suspicionless, and constant monitoring.

In this case, Task Force Officers used the Flock database early in their investigation to identify a vehicle they allege was used in a robbery.  The identification of that vehicle through the Flock system led directly to in-person surveillance, GPS monitoring of a vehicle, warrants to search a house, vehicle, phones, and arrests in this case.  Those fruits should be suppressed.

In particular, a street robbery occurred on April 22, 2023 in Richmond city.  The camera from a nearby business showed a vehicle – a gold four door Acura with decals on the back windows (but no license plate).  Detective Sandlin of Richmond Police department used the pictures from the business surveillance to search the Flock Camera System, where he found a match on the make, model, color and decals in the database generated by Flock's machine learning algorithm.  Exhibit 2 (Attachment A of GPS tracking warrant).  The high resolution Flock photographs gave him a license plate number, which of course led to an address and the name of Mr. Martin's girlfriend.  The Flock system also was able to provide the location of the same vehicle leaving and arriving at her address around the time of the robbery.  This is because Richmond Police Department has placed a Flock Camera directly at the entrance to the apartment complex to monitor, 24/7, anyone who leaves or arrives at the apartments.



As a result of this search, Det. Sandlin was able to obtain a GPS tracking warrant for the vehicle.

In the meantime, another robbery happened at a BP gas station in Chesterfield on April 23, 2023. Again the Flock camera system showed the suspected vehicle in the area, among many other cars. Exhibit 3.

The device was placed on the car on May 3, 2023 at 3:25 am.  The data obtained through that search in turn showed that the vehicle was at the location of the charged robbery of Tobacco Hut on May 4, 2023.  Officers conducted surveillance of the registered address for the vehicle, observed Mr. Martin, and arrested him while driving the vehicle.  They then, relying on the Flock data and evidence derived from the Flock data, obtained warrants to search Mr. Kumkio's phone, the vehicle he was driving, and the house where he was staying.  There they found a gun which appeared similar in color (teal) to the gun used in the robberies, as well as wigs and a bag that appeared to match surveillance video from the robbery.

In sum, the identification of the vehicle and resulting arrests and seizures depended on the Flock Camera system, as the officers' reports acknowledge.  See Exhibit 4:



04/24/2023
Using the surveillance footage images MPO Redford used the FLOCK cameras to locate the suspect vehicle.

Image from surveillance camera showing a sticker on the drivers side

Image from surveillance footage showing sticker on passenger side

Image from FLOCK camera showing matching sticker on drivers side

Image from FLOCK camera showing matching sticker on passenger side

**II.     The Use by Police of the Flock Safety Mass Surveillance System Violates the Fourth Amendment**

The Fourth Amendment protects, in addition to traditional trespass-related property rights, any invasion by the government into a reasonable expectation of privacy.  *See Carpenter v. United*

4

*States*, 585 U.S. 296, 304 (2018).  "[A] central aim of the Framers was "to place obstacles in the way of a too permeating police surveillance." *Id*. at 305.

It is, of course, only recently that "twenty-four hour surveillance of any citizen of this country [has become] possible." *Id*. at 307.  The Court took up that question in *Carpenter v. United States*, 585 U.S. 296 (2018).  In *Carpenter*, the Supreme Court held for the first time that individuals can keep a reasonable expectation of privacy even in information subject to public view.  It noted that cell site information is "detailed, encyclopedic, and effortlessly compiled." *Id*. at 309.  This had never been possible, so "society's expectation has been that law enforcement agents and others would not—and indeed, in the main, simply could not—secretly monitor and catalogue every single movement of an individual's car for a very long period." *Id*. at 310.  Therefore, the Supreme Court held, the retrieval of cell site location information over 127 days, even though compiled by a private business "for commercial purposes" still constituted a search.

After *Carpenter*, the Fourth Circuit sitting en banc invalidated a mass surveillance tool used in Baltimore in *Leaders of a Beautiful Struggle v. Baltimore Police Dept.*, 2 F.4th 330 (4th Cir. 2021) (en banc).  In that case, surveillance overflights provided daytime images of nearly the entire city, although only at resolution that showed individuals and vehicles as "blurred dots or blobs." *Id*. at 334.  Fifteen to twenty-five contractors analyzed the data in "two shifts per day seven days per week" to track individuals and vehicles before during and after their presence at violent crimes including murder, armed robbery, and carjacking. *Id*.  The information was retained for 45 days. *Id*.

The Fourth Circuit, en banc, held that the program violated the Fourth Amendment.  It violated the reasonable expectation of privacy in the whole of a person's movement established in *Carpenter*.  Importantly, it revealed information that would not have been available to police at

the time of the Founding, *id*. at 340-341 (discussing police capabilities "prior to the digital age." citing *Kyllo v. United States*, 533 U.S. 27 (2001)); it was retrospective, allowing searches back through 45 days of data, *id*. at 342; it was not limited to those under suspicion but "runs against everyone," *id*. at 342. Most importantly, it "enable[d] deductions about what a person does repeatedly, what he does not do, and what he does ensemble, which reveals more about a person than does any individual trip viewed in isolation." *Id*. (cleaned up).

The same is true of the Flock Safety camera system. It's a recent innovation that, because of its use of computer intelligence and networking, vastly expands the capability of law enforcement to provide insights into private lives. It "record[s] everyone's movements," *id.* at 342 and not just those under suspicion. It allows retrospective reconstruction of movements, *id*. at 343. In sum, it "surpasse[s] ordinary expectations of law enforcement's capacity and provide[s] enough information to deduce details from the whole of individuals' movements." *Id*. at 343.

Therefore, the Court should hold that the use of the Flock camera system violates the Fourth Amendment, and suppress any evidence derived from its use in this case.

Respectfully Submitted,
Kumkio Martin.

By: _____/s/_____
Counsel
Joseph S. Camden
Va. Bar No. 92143
Assistant Federal Public Defender
Office of the Federal Public Defender
701 E. Broad St., Ste. 3600
Richmond, VA 23219
(804) 565-0830
Fax (804) 648-5033
joseph_camden@fd.org

7