**IN THE UNITIED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal Number: 3:23CR150-REP |
| | ) | |
| | ) | |
| KUMKIO MARTIN, | ) | |
|       Defendant. | ) | |
| | ) | |

**DEFENDANT'S REPLY TO THE UNITED STATES' RESPONSE TO DEFENDANT'S SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE DERIVED FROM THE FLOCK CAMERA SYSTEM**

Now comes the defendant, Kumkio Martin, by counsel, and submits this reply to the United States' response to defendant's supplemental motion to suppress. Because the government's response fails to present a sufficient basis for the warrantless search of the Flock system, Mr. Martin respectfully requests that this Court grant his motion to suppress the evidence obtained as a result of the search.

**I.    Mr. Martin has a legitimate expectation of privacy in the totality of his movements as recognized by the 4th Amendment**

In arguing that law enforcement did not conduct a search when accessing the Flock camera system, the government asserts that Mr. Martin did not have an objectively reasonable expectation of privacy because (1) there is no expectation of privacy in a license plate number, (2) there is no expectation of privacy in driving a vehicle on a public thoroughfare, and (3) there is no expectation of privacy in the limited amount of information collected on Martin's movements captured by the Flock system.

1

Because the government misconstrues the holdings in *Carpenter* and *Leaders*, this Court should find that Mr. Martin did, in fact, have a legitimate expectation of privacy in the totality of his movements and grant his motion to suppress.

### a. Capturing and cataloguing every person's movements violates society's expectation of privacy in the whole of their movements

Mr. Martin recognizes the precedent which holds that there is generally no expectation of privacy in one's license plate; however, this case is distinguished from those cited by the government regarding license plate readers (LPR) as the government *did not have a license plate prior to accessing the Flock system*. In each of the cases cited by the government, law enforcement had already acquired information on a suspect's license plate and thus could very narrowly search for that specific information. That is not the scenario here. Law enforcement did not simply view a license plate and then run the information through a database[1] or witness a presumably improperly displayed registration tag and run the vehicle's information.[2]  Instead, law enforcement searched a third-party system that had previously captured the movements of every person operating a vehicle passing the lens of the camera and stored that information until it could be called upon. While the license plate numbers themselves may not invoke an expectation of privacy, the capturing of every movement by an individual does. Attempting to narrow the scope of what the Flock system actually accomplishes through its network of cameras by comparing it to a traditional LPR system does not negate the 4th Amendment's protections.

As the *Carpenter* Court noted when recognizing the difficulty law enforcement may have in pursuing a suspect for an extended period time, "society's expectation has been that law enforcement agents and others would not—and indeed, in the main, simply could not—monitor

---

[1] *United States v. Diaz—Castaneda*, 494 F.3d 1146, 1152 (9th Cir. 2007).
[2] *United States v. Miranda—Sotolongo*, 827 F.3d 663, 668 (7th Cir. 2016).

and catalogue every single movement of an individual's car for a very long period."[3] Beyond simply capturing a license plate, this capturing and cataloguing of vehicle information is exactly what the Flock system does in contravention of society's expectation.

### b. Courts have recognized that a person does not give up all 4th Amendment rights when entering the public sphere

The government relies on the U.S. Supreme Court's holding in *United States v. Knotts*, 460 U.S. 276 (1983) for the premise that one traveling on public thoroughfares has no expectation of privacy in his movements. However, the *Carpenter* Court explicitly distinguished the *Knotts* holding when it highlighted its earlier reservation in *Knotts* that "different constitutional principles may be applicable if "twenty-four hour surveillance of any citizen of this country [were] possible.""[4]

The Supreme Court was concerned in 1983 when it decided *Knotts* about the possibility of 24-hour surveillance of citizens. The Flock system not only makes that 24-hour surveillance of citizens possible, it is in fact occurring in the present case.

### c. Mr. Martin has clearly established the Flock system's ability to track the totality of his movements.

#### 1. The Flock camera system is more than just a traditional ALPR system

The government asserts that because of the limited use of data gathered concerning Mr. Martin's movements there was no search. The government then cites several cases regarding challenges to ALPR systems as support for its position. However, for the same reasons outlined above in section (a) the government's argument fails.

---

[3] *Carpenter v. United States*, 585 U.S. 296, 310 (2018).
[4] *Carpenter*, 585 U.S. at 307.

In *United States v. Rubin*,[5] the District Court declined to suppress evidence obtained from an ALPR system. While the government in its response correctly noted the *Rubin* Court's findings regarding the particular database at issue, the response failed to identify why the Court reached its decision which was in large part due to the limited capabilities presented by the ALPR system in that case. The Court found that the ALPR system at issue (for which the police had a partial license plate to search) did not, and probably could not, provide anymore information than what could obtained through normal surveillance.[6] The Court declined to base its decision on what might be possible in the future for ALPR databases.[7]

What future possibilities the Court was concerned with in *Rubin* already exist in the Flock camera system and, thus, align the Flock system more closely to those surveillance systems in *Carpenter* and *Leaders* than in *Rubin* or *Porter*. As discussed in Mr. Martin's supplemental brief on pages 7-8, Flock's more than 188 cameras in the Richmond region currently operate 24 hours a day, 7 days a week with the current ability to connect to Flock cameras anywhere in the United States.[8] Flock has also entered agreements with local retail establishments extending its surveillance capacity beyond just law enforcement agencies which can also request access to these private retail cameras.[9] Furthermore, Flock is updating the features of its system every day to include different characteristics that can be searched.[10] As former Richmond Police Officer Richard Redford testified, the Flock system is more than just a license plate reader as it has been extended to search for information beyond just license plates.[11]

---

[5] 556 F. Supp. 3d 1123 (N.D. Cal. 2021).
[6] *Id*. at 1129-1130.
[7] In *United States v. Porter*, No. 21-cv-00087, 2022 U.S. Dist. LEXIS 6755, (N.D. Ill. Jan. 13, 2022), law enforcement officers had already obtained a license plate prior to accessing a license plate database. Accordingly, the government's reliance on this case is also misplaced for the reasons outlined above regarding *Rubin*.
[8] ADD CITATION
[9] Tr. 3 at 30.
[10] Tr. 3 at 23.
[11] Tr. 2 at 88.

Flock has placed its camera system in numerous areas frequented by the public beyond just main thoroughfares: schools, neighborhoods, community centers and retailers.[12] Neither the *Rubin* nor *Porter* courts had to address such a system in their rulings. The purported limited data referenced in the government's response does not address the full scope of the Flock system's capabilities. It is the access to such a system that invokes 4th Amendment protections.

2. **Flock's broad surveillance system is exactly the type of system that raised alarms in *Carpenter* and *Leaders***

Mr. Martin incorporates all of the arguments presented in the previous section here. Having identified the Flock system's ability to track the totality of his movements through its networked cameras, Mr. Martin was, in fact, stopped and the subject of a search based on the information gathered from the Flock system which was searched without a warrant. Officers testified that they conducted a search of the Flock system and recovered the license plate of a gold Acura believed to be used in the current crimes. Based on the information from the Flock system, officers were able to secure a warrant for a GPS device to place on the car Mr. Martin was driving and, subsequently, to arrest him as he drove the car. Mr. Martin asserts he has clearly established more than a preponderance of the evidence that police detailed his movements contrary to the government's assertions.

Additionally, the government's reliance on the fixed nature of the Flock cameras does not hold up in light of *Carpenter*. The cell towers in *Carpenter* were fixed (as were the towers in *Chatrie*). While the *Carpenter* Court was focused on CSLI, it's reasoning is just as applicable to the interconnected and expanding camera system of Flock. *Carpenter* was not only concerned with persons under suspicion, but all persons against whom the new tracking capacity could

---

[12] Tr. 3 at 35.

run.[13] As the Court noted, unlike with a GPS device, "police need not even know in advance whether they want to follow a particular individual, or when."[14]

The Flock system raises identical concerns without regard to the stationary nature of the cameras because of the networking capability, access to retail and community cameras, and constantly increasing numbers of characteristics. The Court should grant Mr. Martin's motion to suppress evidence obtained as the result of a 4th Amendment violation.

## II. The 4th Amendment's *Good Faith* Exception is inapplicable in the current matter.

"As a general rule, the Fourth Amendment requires that law enforcement searches be accompanied by a warrant based on probable cause." *United States v. Kolsuz,* 890 F.3d 133, 137 (4th Cir. 2018). Warrantless searches and seizures "conducted outside the judicial process," without prior approval by a judge or a magistrate - are *per se* unreasonable, subject only to a few well-established exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967).

Mr. Martin asserts that the search of the Flock system was an improper, warrantless search under the 4th Amendment. As such, the "good faith exception" to the exclusionary rule is inapplicable to the initial search and any evidence derived therefrom should be suppressed.

The Supreme Court laid out the criteria for application of the good faith exception in *United States v. Leon*.[15] *Leon* involved officers acting in good faith on a search warrant later determined to lack probable cause.[16] The absence of any search warrant for the Flock system initially dooms the government's argument. To circumvent this principal of 4th Amendment

---

[13] *Carpenter*, 585 U.S. at 312.
[14] *Id*. at 312.
[15] 468 U.S. 897 (1984).
[16] *Id*.

jurisprudence, the government cites to the Supreme Court's case in *Davis v. United States*[17] , and the 4th Circuit's *United States v. Chavez*.[18]  However, neither of these cases are controlling. *Davis* involved the attempted suppression of evidence following a change in the Court's rule governing the parameters of a search incident to arrest involving an automobile. The *Davis* opinion spelled out those instances where *Leon* has been extended including to cases involving invalidated statutes, erroneous information in a database maintained by judicial employees or to cases where police employees erred in maintaining records in a warrant database.[19]

The present case does not present any of these factors to justify the application of the "good faith exception." Contrary to the government's assertion there was no applicable binding appellate precedent that authorized warrantless searches of third-party data systems. Rather, the line of cases in existence at the time of the present search of the Flock system, including *Carpenter*, *Jones*, *Leaders, Katz*, *Knotts* and others all spoke to the need for a warrant unless the search fit within an exception as outlined above. Additionally, *Chavez* falls squarely within the parameters set forth by *Davis* in that officers in *Chavez* relied on a subsequently invalidated statute. Those are not the facts here where neither statutory language, a warrant nor judicial precedent authorized the search of the Flock system by law enforcement.

Accordingly, the court should deny the government's request to find that the good faith exception applies.

## Conclusion

Mr. Martin asserts, in reliance on *Carpenter* and *Leaders,* that it is the *accessing of the data* that constitutes a search. The Flock camera system captures and retains not only Mr.

---

[17] 564 U.S. 229 (2011).
[18] 894 F.3d 593 (4th Cir.2018).
[19] *Davis*, 564 at 238-239.

Martin's movements, but every single person traveling within its national web of linked cameras. Mr. Martin had a reasonable expectation of privacy that the whole of his travel would not be monitored or tracked by the government. Accordingly, the search of the Flock system amounted to a search in violation of the 4th amendment.

Mr. Martin requests that any evidence obtained as a result of the unconstitutional search be suppressed.

Respectfully submitted,

KUMKIO MARTIN

/s/ Carlos L. Hopkins
By Counsel

Carlos L. Hopkins (VSB #39954)
Gentry Locke Attorneys
919 East Main Street, Suite 1130
Richmond, VA 23219
Tele: (804) 297-3700
Fax:  (540) 983-9400

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2024, I electronically transmitted the foregoing document via the Court's ECF system, which provided service on all counsel of record.

/s/ Carlos L. Hopkins
By Counsel
